## United States District Court

DISTRICT OF ____DELAWARE____

UNITED STATES OF AMERICA

**REDACTED**

v.

Criminal Complaint 06- 62M

DION L. BARNARD

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about January 12, 2006, in New Castle County, in the District of Delaware defendant,

**Dion L. Barnard**

did knowingly distribute fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)

in violation of Title  21  United States Code, Section  841(a)(1) and (b)(1)(A)  .

I further state that I am a Task Force Officer with the DEA and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:    YES

TFO _____
Signature of Complainant
Donald R. Pope
Task Force Officer
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

 April 28, 2006                                        at   Wilmington, DE  
Date                                                     City and State

Honorable Mary Pat Thynge
United States Magistrate Judge                      _____
Name & Title of Judicial Officer                     Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant Donald R. Pope, being duly sworn and deposed, states as follows:

1.      Your Affiant is a Task Force Officer with the United States Drug Enforcement Administration (hereinafter "DEA"). As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have been a Task Force Officer with DEA for approximately two and a half years, currently assigned to the Wilmington, Delaware, Resident Office. Among other duties, I am now responsible for the instant investigation.

2.      I have been employed by the Delaware State Police ("DSP") for the past eighteen (18) years. During my employment with the DSP, including my tenure as a Task Force Officer with the DEA, I have participated in numerous drug and money laundering investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants, reviews and analyses of taped conversations and records of drug traffickers. Therefore, I am familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement, as well as methods used to finance drug transactions and launder drug proceeds.

3.      On January 12, 2006, your affiant met with a DSP informant regarding information on a subject that sold crack cocaine. The informant stated that he/she knew a subject that drove a white Honda Accord (DE tag                           . The Delaware DMV information for this tag number comes back to a 1993 Honda Accord registered to Dorenda May Richardson,                           , Wilmington, Delaware 19805, which registration was effective December 7, 2005. The informant described the subject as a black male, approximately 6 feet tall and 200 pounds, with black hair and brown eyes. The informant knew the subject as "Ross," a then-current probationer with Delaware State Probation and Parole. The informant further knew that "Ross" frequented the Southbridge area of Wilmington, Delaware.

4.      Prior to January 12, 2006, the informant had spoken with "Ross" and the informant and "Ross" had agreed to meet at the Shell gas station at the corner of Walnut and "A" Streets, Wilmington, Delaware on January 12, 2006 at approximately 2:00 p.m. for the purpose of the informant purchasing crack cocaine from "Ross." Accordingly, your affiant arranged to have the informant proceed with the previously agreed upon meeting, for the purpose of purchasing crack cocaine.

5.      On January 12, 2006, at approximately 1:30 p.m., your affiant met with the informant and briefed him/her on the procedures for the anticipated purchase of crack cocaine from "Ross." At that time, your affiant searched the informant and found him/her to be free of any drugs, weapons, contraband or currency. Your affiant then outfitted the informant with an audio transmitter and a video camera (the video camera failed) and $2,000 in U.S. currency. Your affiant then traveled by car with the informant to the Shell gas station at the corner of Walnut and

"A" Streets, arriving at approximately 1:50 p.m.

6.  At approximately 2:04 p.m. on January 12, 2006, "Ross" and an unknown black male passenger arrived at the Shell station. "Ross" was driving a white Honda Accord, DE registration/  . "Ross" parked the car and got out and walked inside the Shell gas station. At the same time, the informant got out of your affiant's car and likewise walked inside the Shell gas station. The male passenger remained in the Honda Accord. The activity outside the Shell gas station was recorded via handheld camera by a DEA Special Agent.

7.  At approximately 2:13 p.m., "Ross" and the informant left the Shell gas station. "Ross" got back into the Honda accord and left the Shell gas station, heading East Bound on "A" Street. The informant got back into your affiant's car, and your affiant took possession of a plastic bag containing a suspected controlled substance which the informant had purchased from "Ross." Your affiant and the informant then returned to the Wilmington Resident Office and the informant was searched and found to be free of drugs, weapons, currency or contraband. After returning to the Wilmington Resident Office, the suspected controlled substance was field tested and tested positive for the presence of cocaine. The substance was also weighed and found to weigh approximately 112 gross grams (which included packaging and evidence bagging). The substance was subsequently sent to the DEA North East Laboratory where it was confirmed to be cocaine base with a net weight of 69.2 grams.

8.  In April 2006, "Ross" was identified as Dion L. Barnard. Barnard is currently an active probationer. Barnard's DELJIS information lists his current address as  Wilmington, Delaware, the same address as on the registration for the vehicle Barnard drove to the January 12, 2006 cocaine deal at the Shell gas station. In April 2006, the informant positively identified Barnard as the man he knew as "Ross" and from whom he purchased the crack cocaine on January 12, 2006 at the Shell Station.

Based on the above information, I believe that there is probable cause to believe that on or about January 12, 2006, Dion L. Barnard violated Title 21, United States Code § 841(a)(1) and (b)(1)(A) by distributing fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base.

TFO _____
Donald R. Pope, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this the 28th day of April 2006.

_____
Honorable Magistrate Judge Mary Pat Thynge

2